IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

PAMELA SMITH                                                                PLAINTIFF

v.                                                   Civil Action No. 3:14-cv-428-TSL-JCG

CAROLYN W. COLVIN,
Acting Commissioner of Social Security                      DEFENDANT

## REPORT AND RECOMMENDATIONS

This matter is before the Court on the Motion [12] for an Order Affirming the Decision of the Commissioner filed by Carolyn W. Colvin ["Commissioner"] on March 30, 2015.  Plaintiff Pamela Smith has filed a Response [14] in opposition.  Pursuant to 42 U.S.C. § 405(g), Smith seeks review of the administrative decision by the Commissioner denying her claim for a period of disability, disability insurance benefits, and supplemental security income. Compl. [1], at p. 3.  The undersigned submits this Report and Recommendations to the United States District Judge and recommends that the Commissioner's Motion [12] be granted.

### I.  BACKGROUND

A.   Administrative Proceedings

On May 23, 2011, Pamela Smith protectively filed applications with the Social Security Administration for a period of disability, disability insurance benefits, and supplemental security income, asserting an onset of disability beginning December 5, 2010.[1]  Smith's applications were denied both initially on

---

[1] Smith filed two applications on May 23, 2011, one for a period of disability and disability insurance benefits and one for supplemental security income. Both applications asserted an onset of disability beginning December 5, 2010.

September 16, 2011, and upon reconsideration on January 6, 2012. Thereafter on January 15, 2012, Smith timely filed a request for hearing before an Administrative Law Judge ["ALJ"].

ALJ Wallace Weakley conducted a hearing on March 21, 2013, in Hattiesburg, Mississippi. Smith[2] and Thomas J. Stewart, a vocational expert witness ["VE"] testified at the hearing. The ALJ issued an unfavorable decision on April 26, 2013, finding that from December 5, 2010, through the date of decision, Smith was not disabled within the meaning of the Social Security Act. On June 5, 2013, Plaintiff appealed the ALJ's decision, filing a Request for Review. On April 2, 2014, the Appeals Council denied Smith's request for review of the ALJ's decision, thereby rendering the ALJ's decision as the final decision of the Commissioner. Having exhausted her administrative remedies, Smith timely commenced the present action by Complaint filed May 29, 2014, seeking judicial review of the administrative proceedings pursuant to 42 U.S.C. § 405 (g).

B.   Statement of Facts

Smith was born on January 19, 1962, and was 51 years of age at the time of the hearing.[3] She completed high school and had no additional education. R. [9], pp. 35-36. Smith's previous employment and past work experience includes

---

[2]Mr. Gary Parvin represented Smith and was present at the hearing conducted on March 21, 2013. R. [9] at p. 26.

[3] Smith was 49 years old at the time of the alleged disability onset date of December 5, 2010.

managing Variety Wholesalers, Super 10 store, food service and office manager. R. [9], pp. 36-37. Smith's duties as an office manager included bookkeeping, payroll, and handling of legal documents. R. [9], at p. 50. Smith is divorced, receives $200.00 per month in food stamps, and otherwise relies on her father to financially support her. R. [9], pp. 35, 38.

Smith described her daily routine to include rising around 7:00 a.m. and retiring at approximately 10:00 p.m.. She is able to wash dishes for ten minute intervals and take care of her laundry and to bathe and take care of her own grooming. She stated that she is unable to run a vacuum and only occasionally makes up her bed due to pain. R. [9], at pp. 45-47.

Smith testified that she has difficulty sleeping and wakes up in pain frequently during the night. R. [9], pp. 46-47. She is able to stand for ten minute periods before needing to sit and vice versa. *Id*. at p. 47. Smith stated that she has difficulty grasping larger objects with her right hand and often drops items throughout the day. *Id*. at p. 48. Smith testified that overall her ability to perform household and daily tasks is around 25% of what she used to be able to do. R. [9], at p. 53.

Smith's chief medical complaint is that of pain associated with her back conditions. Smith testified that following her cervical surgery performed by Dr. Neill in December, 2010, her overall condition worsened and associated pain and numbness in her arms increased. R. [9], at pp. 38-39. Smith stated that due to the increased pain levels, she began seeing Dr. Eric Pearson. According to Smith, Dr.

Pearson informed her that the MRI performed in July of 2011, revealed additional problems. R. [9], at pp. 43-44.  The medical evidence of record includes reports, test results, and letters from Smith's treating physicians Dr. Neill and Dr. Pearson. There are also evaluations and opinions rendered by Dr. Madena Gibson and Dr. Saddler. R. [9], at p. 326.

C.    The ALJ's Findings

The ALJ utilized the five-step sequential process in evaluating and considering Smith's disability claims.  In step one, the ALJ determined that Smith had not engaged in substantial gainful work activity since December 5, 2010, the alleged onset date.  After reviewing Smith's medical records and evaluating the testimony at the administrative hearing, the ALJ in step two concluded that Smith had "severe impairments" including: status post cervical discectomy and fusion at C5-6 and C6-7, status post cervical discectomy and fusion at C4-5, and chronic neck pain. R. [9], at 19.  At step three, the ALJ determined that Smith's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. [9], p. 20. The ALJ, in completing step four of the analysis, performed a residual functional capacity ["RFC"] assessment.  After considering the medical evidence and the testimony from the hearing, the ALJ ultimately determined that Smith was able to perform her past relevant sedentary work as an office manager with the following limitations: "except that he [sic] cannot perform firm gripping with his [sic] domination, right hand.  She can do fine gripping and fine manipulation.  She

cannot do repetitive motion of her head in either plane." R. [9], at pp. 20-21. He further determined that "[t]his work does not require the performance of work-related activities precluded by claimant's residual functional capacity." R. [9], at p. 25. Accordingly, the ALJ concluded that Smith was not disabled from December 5, 2010, through April 26, 2013, the date of the administrative decision. R. [9], at 25.

## II. ANALYSIS

A.  Standard for Administrative Review

A review of the Commissioner's denial of benefits is limited to two inquiries: (1) whether the decision is supported by substantial evidence in the record as a whole, and (2) whether the Commissioner applied the correct legal standards. *Copeland v. Colvin*, 771 F.3d 920, 922 (5th Cir. 2014) (citing *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)). Substantial evidence must be more than a mere scintilla, but it need not be a preponderance. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

The Court's role is to scrutinize the entire record to ascertain whether substantial evidence supports the Commissioner's findings. The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Audler v. Astrue,* 501 F.3d 446, 448 (5th Cir. 2007) (citing *Hollis v. Bowen,* 837 F.2d 1378, 1383 (5th Cir. 1988)). This is so, even if the Court determines that the evidence could allow for a different finding. *Strickland v. Harris,* 615 F.2d 1103, 1106 (5th Cir. 1980).

As summarized by the United States Court of Appeals for the Fifth Circuit,

> [t]he claimant has the burden of proving she has a medically determinable physical or mental impairment lasting at least twelve months that prevents her from engaging in substantial gainful activity. *See* 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1572(a) and (b). The ALJ uses a five-step sequential process to evaluate claims of disability and decides whether: (1) the claimant is not working in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant's impairment meets or equals a listed impairment in Appendix 1 of the Regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520.
>
> The claimant bears the burden of proof on the first four steps and the burden shifts to the Commissioner for the fifth step. Thus, the claimant must show first that she is no longer capable of performing her past relevant work. 20 C.F.R. § 404.1520(e). If the claimant satisfies this burden, then the Commissioner must show that the claimant is capable of engaging in some type of alternative work that exists in the national economy. *See Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987). Once the Commissioner makes this showing, the burden of proof shifts back to the claimant to rebut this finding. *Id.*

*Newton v. Apfel*, 209 F.3d 448, 452–53 (5th Cir. 2000).

Conflicts in the evidence are to be resolved by the Commissioner, *Laffoon v. Califano,* 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence, *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983)(citations omitted).

In the present case, the ALJ determined that Smith was not disabled at Step four of the analysis. Smith, as the claimant, bears the burden of proof during step

one through step four of the sequential analysis. *See Leggett v. Chater,* 67 F.3d at 564.

B. <u>Alleged Assignments of Error</u>

    1. <u>The ALJ's Determination of Smith's Alleged Impairments as Non-Severe Was Unsupported by the Evidence</u>

Smith asserts that the ALJ, in completing step two of the sequential evaluation erred in his determination that her lumbar impairment was not a severe impairment, and, as a result, his conclusions are not supported by substantial evidence. Specifically, Smith takes issue with the ALJ's finding regarding the severity of Smith's lumbar back pain.

> While the records documents complaints of, or references to, lower back pain, no functional limitations are established in conjunction with these conditions. Neither the record nor the claimant's testimony establish preponderant evidence of more than minimal functional limitations which, since the alleged onset date, have persisted or which are expected to persist continuously for at least 12 months in conjunction with these conditions.

R. [9], at p. 20.

Smith further argues that the law and regulations do not require her to produce a "preponderant" of evidence, only that she provide medical evidence demonstrating the severity of an impairment during the time alleged as being disabled. Pl.'s Resp. [14], at p. 3. She further contends that because the ALJ failed to carry his burden in step two, the remainder of his analysis was flawed.

In the present case, the ALJ relied on the medical opinion evidence provided by Drs. Gibson, Pearson, and Neill relating to Smith's lumbar / lower back condition

and the associated pain.

> Dr. Neill . . . determined that Smith's January 18, 2011, MRI] showed degenerative changes, but was otherwise unremarkable. He noted that there was some foraminal stenosis at C6-7, particularly on the left, but this was mild and her complaints were on the right. He saw nothing to suggest any ongoing nerve root compression.

R. [9], at p. 23.

> The undersigned gives partial weight to the opinion of State agency consultant Madena Gibson, M.D., who reviewed the evidence of August 10, 2011, . . . and determined that claimant could work at light exertional level with limited overhead reaching. While this opinion is consistent with the evidence reviewed by Dr. Gibson at the time, the overall evidence demonstrates that the claimant should be limited to the sedentary level of exertion and she should not perform repetitive motion of her head in either plane.

R. [9], at p. 24.

> The treating physician's opinions rendered on March 23, 2011, and February 18, 2013, are less persuasive because they lack evidentiary support, are inconsistent with other evidence, including the doctor's own treatment records, and the opinion rendered in these letters is arguably a non-medical opinion offered on a matter reserved for the Commissioner. Accordingly, the opinion of Eric Pearson, M.D. is given little weight.

R. [9], at p. 24.

The ALJ properly performed his function as the trier of fact and made affirmative, specific findings regarding Smith's subjective complaints in accord with SSR 96-7p. *See Chambliss v. Massanari,* 269 F.3d 520, 522 (5th Cir. 2001)(citations omitted); *Greenspan v. Shalala,* 38 F.3d 232, 237 (5th Cir. 1994). His credibility determination cannot reasonably be characterized as conclusory and is entitled to considerable deference because the ALJ was present and enjoyed the benefit of

observing Smith's person and testimony at the hearing. *Loya v. Heckler,* 707 F.2d 211, 215 (5th Cir. 1983).

A review of the record reveals that the ALJ applied the appropriate legal standards. Further, the evidence supporting his credibility determination easily exceeds "more than a mere scintilla" of evidence. *Ripley v. Chater,* 67 F.3d 552, 555 (5th Cir. 1995).

2. <u>The ALJ's Finding as to Smith's Impairments Not Meeting Listed Impairments Was Unsupported by the Evidence</u>

Smith next argues that because the ALJ failed to properly consider her lumbar impairment as severe during step two, he erred as a matter of law in his evaluation during step three. Specifically, Smith argues that "the totality of the medical evidence, including clinical, objective, and diagnostic findings, did support a finding that Ms. Smith's severe cervical impairments and chronic pain, in combination with her lumbar spine impairment which was improperly ignored at Steps 2 and 3, met or medically equaled the requirements for a finding of disabled at Step 3 . . . ." Pl.'s Resp. [14], at p. 7.

The Fifth Circuit has admonished the District Courts to remember "that '[t]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled.'" *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988) (per curiam)(citing *Elzy v. Railroad Retirement Bd.*, 782 F.2d 1223, 1225 (5th Cir. 1986) (per curiam); *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983) (per curiam)).

"It is, of course, improper for an ALJ not to consider a claimant's subjective complaints of pain. It is also improper for an ALJ to make no finding as to a claimant's subjective complaints of pain if, if the claimant were believed, said claimant would be entitled to benefits." *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991) (per curiam)(citing *Scharlow v. Schweiker*, 655 F.2d 645 (5th Cir. 1981) (per curiam)). "'How much pain is disabling is a question for the ALJ since the ALJ has primary responsibility for resolving conflicts in the evidence.'" *Id.* at 247 (quoting *Scharlow,* 655 F.2d at 648).

In the present case, the record reflects that the ALJ considered Smith's pain in his evaluation of her disability claim and rendered specific findings as to the limitations and issues created by pain: "the undersigned considered all symptoms and impairments in combination with regard to the limitations of the claimant and concludes that the objective medical evidence is supportive of the residual functional capacity assessed herein, but does not substantiate the claimant's allegations of completely disabling symptoms, pain, or discomfort." R. [9] at p. 25.

The ALJ's findings with regard to the debilitating effect of the Claimant's "subjective complaints is entitled to considerable judicial deference if supported by substantial record evidence." *Id.; see Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988); *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986). A review of the record reveals that the ALJ applied the appropriate legal standards. Further, the evidence supporting his credibility determination easily exceeds "more than a mere scintilla"

of evidence. *Ripley v. Chater,* 67 F.3d 552, 555 (5th Cir. 1995).

### 3. The ALJ's Determination of Smith's Residual Functional Capacity is Unsupported by the Evidence

Smith next asserts that the ALJ in performing the sequential evaluation, erred in his analysis of her residual functional capacity and, as a result, his conclusions are not supported by substantial evidence. Specifically, Smith contends that the ALJ's "assessment was deficient and unsupported by any medical opinion from a treating or examining physician." Pl.'s Resp. [14], at p. 12.

As discussed above, the ALJ disclosed and discussed the medical evidence that he found both persuasive and non-persuasive. The ALJ, as the administrative finder of fact, determines the credibility of medical experts and lay witnesses and weighs their opinions and testimony. Although the treating physician:

> should be accorded considerable weight in determining disability . . . the ALJ may give less weight to a treating physician's opinion when 'there is good cause shown to the contrary,' as is the case when his statement as to disability is 'so brief and conclusory that it lacks strong persuasive weight, is not supported by medically acceptable clinical laboratory diagnostic techniques, or is otherwise unsupported by the evidence.'

*Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985) (citing *Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir. 1981) and *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980)).

In making a credibility determination regarding treating physicians, the ALJ must weigh the subjective testimony against the objective evidence. *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987). "Subjective evidence need not take precedence over objective evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir.

1990). "As a trier of fact, the ALJ is similarly charged with the responsibility and discretion to determine just what weight to give to conflicting evidence presented at the hearing." *Wingo v. Bowen*, 852 F.2d 827, 830 (5th Cir. 1988) (citing *Loya v. Heckler,* 707 F.2d at 214)).

In the present case, the ALJ, after considering all of the evidence, declined to give full weight to the opinion rendered by Dr. Pearson. In his findings, the ALJ noted that he considered the medical opinion of Dr. Pearson. However, he further found that it was not consistent with the bulk of objective evidence. R. [9], at p. 24.

An ALJ may reject the opinion of a treating physician where there is good cause and contrary opinions by other sources. *See Milam v. Bowen*, 782 F.2d 1284, 1284, 1287 (5th Cir. 1986). It was within the ALJ's province to reject certain medical evidence in this case. The ALJ recognized the time frames for, as well as the extent of treatment rendered by Dr. Pearson before refusing to accord full weight to his medical assessment of Smith. *See Greenspan v. Shalala*, 38 F.3d 232, 238 (5th Cir. 1994)("when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony."); *Martinez v. Chater*, 64 F.3d 172, 175 (5th Cir. 1995)(ALJ can limit reliance on a treating physician's opinion where it contradicts the medical evidence contained in the record).

In formulating his decision, the record demonstrates that the ALJ considered all of the enclosed medical records and testimony before rendering his decision. The ALJ's conclusions are exhaustive, all elements were considered and the medical evidence weighed and discussed. The ALJ recognized Smith's impairments

supported by medical evidence and determined that her lumbar condition was insufficiently supported to label as a severe impairment. Evidentiary conflicts, "including medical reports from physicians, which are unsupported by any clinical or laboratory diagnostic data or findings may be properly discounted by the Secretary in his ruling. . . . '[c]onflicts in the evidence, including those arising in medical opinions, are to be resolved not by the courts, but by the Secretary.'" *Jones v. Heckler*, 702 F.2d 616, 621 (5th Cir. 1983) (citing *Laffoon v. Califano*, 558 F.2d at 253)).

It is the opinion of the undersigned that the record supports the ALJ's decision to accord full weight to Dr. Neill's assessment and to limit Dr. Pearson's opinion with regard to Smith's physical limitations. The medical evidence, taken collectively, establishes that while Smith does have objective medical conditions, including status post cervical discectomy and fusion at C5-6 and C6-7, status post cervical discectomy and fusion at C4-5, and chronic neck pain, these physical problems are not disabling conditions and do not preclude her from performing her past relevant work as an office manager.

### III. RECOMMENDATIONS

For the reasons stated, the undersigned is of the opinion that the Commissioner's decision is supported by substantial evidence and in accord with correct legal standards. It is recommended that the Commissioner's [12] Motion for an Order Affirming the Decision of the Commissioner be granted.

## IV. NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U.Civ.R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Automobile Assoc.,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED,** this the 9th day of July, 2015.

*s/ John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE